Cite as 2023 Ark. App. 391

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-20-549

| | |
|---|---|
| KELLY L. BRANAM AND CYNTHIA HALL | Opinion Delivered September 20, 2023 |
| APPELLANTS | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. 18CV-17-647] |
| V. | |
| HERAEUS ELECTRO-NITE, LLC; DAVID MILLER; LANDSTAR RANGER, INC.; LM GENERAL INSURANCE COMPANY; SHERITA FRANKLIN; JUSTIN ROBERT DAVIS; AND INDUSTRIAL POWER PRODUCTS, INC. | HONORABLE RALPH WILSON, JR., JUDGE |
| | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |
| APPELLEES | |

## ROBERT J. GLADWIN

This case arises from a series of automobile collisions that occurred on the I-40 Mississippi River bridge west of Memphis on July 10, 2017. The appellants, Cynthia Ann Hall and Kelly Branam, suffered serious injuries when their Jeep Cherokee collided with Joy Hinshaw's tractor-trailer when Hall (the driver of the Jeep) changed lanes to avoid two other collisions on the bridge. Hall and Branam filed suit against Hinshaw, the motorists involved in the other collisions (and those motorists' respective employers), and Hall's uninsured motorist insurance carrier. The circuit court granted the defendants' motions for summary judgment, ruling that Hall and Branam failed to offer proof that their injuries were

proximately caused by the other motorists' alleged negligence. Hall and Branam now appeal the circuit court's judgment. We affirm in part and reverse and remand in part.

I. *Factual Background*

A. The Accidents and the Initial Pleadings

The chain of events leading to Hall's and Branam's injuries began when appellee Sherita Franklin's Ford Mustang stalled in the innermost eastbound lane of the bridge (Lane 1), blocking traffic. Several cars managed to move into the middle lane (Lane 2) and continue over the bridge, but Franklin's Mustang was rear-ended by a Dodge Ram pickup truck driven by appellee Martin Miller, who at the time of the collision, was an employee of appellee Heraeus Electro-Nite, LLC (Heraeus). Shortly thereafter, a Ford F-250 pickup truck driven by appellee Justin Davis, an employee of appellee Industrial Power Products, Inc. (IPP), rear-ended another vehicle—a white Acura—that had stopped in Lane 1 behind the Miller-Franklin collision.

Appellants Hall and Branam were traveling in a red Jeep Cherokee in Lane 1 behind Davis. Hall, the driver of the Jeep, attempted to merge into the traffic traveling in Lane 2, where a Volvo tractor-trailer driven by appellee Joy Hinshaw, an employee of appellee Landstar Ranger, Inc. (Landstar), was traveling over the bridge. Hinshaw's tractor-trailer collided into the rear of Hall's Jeep at a speed of approximately forty-seven miles an hour, propelling the Jeep into the wall in Lane 3 of the bridge. Hall and Branam both suffered serious injuries that left them with no memory of the collision.

Hall and Branam filed a complaint alleging that their injuries and other damages were caused by the negligence of appellees Franklin, Davis, and Hinshaw. The complaint further alleged that Heraeus, Landstar, and IPP were vicariously liable for their injuries under the doctrines of respondeat superior and agency, and appellee LM General Insurance Company (LM General), who provided Hall's uninsured/underinsured motorist coverage, was liable to pay the amount of the judgment exceeding the defendants' liability coverage.

Franklin filed an answer generally denying the allegations in the complaint and affirmatively pleading that Hall and the other defendants were negligent. Miller and Heraeus; Hinshaw and Landstar; and Davis and ICC also filed joint answers that generally denied the material allegations in the complaint and affirmatively pleaded contributory negligence against Hall and negligence and comparative fault against the remaining defendants. LM General also filed a separate answer denying the material allegations in the complaint and asserting various affirmative defenses.

B. The Deposition Testimony

Franklin testified via deposition that she was driving her Mustang in Lane 1 on the eastbound side of the bridge. Lane 1 was the inside lane that was closest to the traffic in the westbound lanes. According to Franklin, her car "stalled out" in Lane 1 after she had traveled "halfway through the bridge." At that time, Franklin "put [her] flashers on" and saw "more than ten vehicles pass [her] on the right." Franklin testified that after approximately one minute, her Mustang was rear-ended by Miller's Dodge Ram pickup truck. She stated that when Miller hit her vehicle, it "shifted to the left because he veered off and hit me from the

3

back passenger side." Franklin opined that the "Ram pickup truck did not brake before it struck [her] vehicle." She further testified that Miller approached her Mustang to identify himself as the motorist who collided with her, and she thought she saw his Dodge Ram truck parked in Lane 2 of the bridge.

Miller testified that he was driving a silver Dodge pickup truck at the time of the accident. He stated that he was three cars in front of Hall's Jeep as he proceeded over the bridge in Lane 1. Franklin's Mustang, he said, was also in Lane 1 when he hit it with his truck. Martin testified that he was driving "with the flow of traffic," which he believed to be "around 65 [miles an hour]." He further explained that he "did not notice Franklin's vehicle until seconds before he rear-ended [it]," and "the only option [he] saw at the time was to move to the right" where he determined he "had clearance." He "was too close," however, and "clipped [the Mustang]." According to Martin, "the left front of [his] vehicle hit the right side of Franklin's vehicle," which "pushed [the Mustang] into the retaining wall." After the impact, Martin remained in the middle lane for a time before he "assumed the traffic was still coming, so [he] pulled the truck back over to the left lane." He explained that he did "not know how far [he] went past the Mustang in the middle lane before [he] made the decision to move off the roadway, but [he] made the decision immediately after." As to whether Franklin activated her hazard lights when the Mustang stalled in Lane 1, Miller testified that he "[did] not remember seeing any blinkers on and [did] not remember any blinkers at all."

4

Davis testified that he was driving a company Ford F-250 pickup truck in Lane 1 traveling eastbound when he approached the bridge. Davis was following a white Acura and could see Hall's red Jeep was "was about two car lengths" behind him when he checked his rear-view mirror "right before getting onto the bridge."

Regarding the first accident that occurred between Franklin and Miller, Davis testified that there was a "big [black] truck . . . blocking the view of the damaged Ford Mustang." The truck "ended up getting over to avoid hitting the black Mustang" and "kept going on." According to Davis, he "did not see any wreck until that big truck got out of the way."

Davis further explained that "as soon as that truck got over, [an] Acura that was in front of [him] had to come to a stop." At that point, Davis "ended up having to come to a stop behind [the Acura], bumping [it]." Davis continued that "a split instant" later, "the red Jeep . . . to avoid hitting me, jumped over to the middle lane and got in front of [Hinshaw's truck] that happened to hit her from the back and pushed her into . . . the far-right side wall [of the bridge]."

Davis further explained that he did not actually see the collision between Hall's Jeep and Hinshaw's truck. Rather, "the accident happened behind [him]," and Hinshaw's truck came to a stop in Lane 2 directly east of his vehicle. Davis claimed that his account of the accident between Hall and Hinshaw was "just judged from common sense as far as that Jeep being behind me to it running over in front of that big truck that was in that middle lane." Davis also explained that while he told the police that Hall's Jeep "sideswiped" Hinshaw's

truck, he did not actually "see any contact" between the two. Indeed, "the only thing [he] witnessed with [his] eyes was that truck coming up to the side of me and coming to a stop and that red Jeep sliding down the right barrier on Lane 3." Davis also "had no idea" of the whereabouts of the tractor-trailer until [he] saw it coming to a stop immediately next to [him]."

Joy Hinshaw, the driver of Landstar's tractor-trailer, testified she had been driving eastbound toward Memphis on the day of the accident. The weather was good, she said, and "the road condition was dry." The Landstar truck was traveling at a speed of fifty-three miles an hour in Lane 2 of the I-40 bridge. Hinshaw maintained that speed until she saw the accident vehicles in Lane 1 "about a hundred feet away." She explained that "there was debris up ahead and traffic had slowed," but she "did not know the pickup truck was actually stopped along with another car." Accordingly, she "did not think [she] needed to apply [her] brakes" but began to slow the tractor-trailer by removing her foot from the accelerator and putting it over the brake. Hinshaw explained that she did not apply her brakes at that point because she was following her training and "was just going to try and get through the situation."

Hinshaw further testified that shortly thereafter, she saw "a red streak," pass her in Lane 1. The "red streak" was Hall's Jeep, and Hinshaw claimed that Hall hit her truck first as she attempted to change from Lane 1 to Lane 2 and then "slam[med] on the brakes in front of [Hinshaw's truck]." Hinshaw claimed that there was "no way" that Hall did not see

6

the Landstar truck approaching, and "she was trying to weasel in between me and another vehicle."

Hinshaw more specifically testified that the passenger side of Hall's Jeep impacted her truck's left front side as Hall changed lanes and, in doing so, "struck the tire or the entire bumper" and flattened one of the truck's tires. Hinshaw further explained that she did not see Hall's Jeep hit her truck, but she "felt the impact." She also said that she applied the truck's brakes after that first impact, whereupon Hall, now in Lane 2 in front of the Landstar truck, also applied her brakes. Hinshaw's truck then impacted the rear of Hall's Jeep, but Hinshaw insisted that the impact "was not straight in the rear." Rather, Hinshaw claimed that her truck hit the Jeep "left in the rear." She opined that Hall's actions were "negligent and stupid because you do not try and fit your Jeep in between a tractor-trailer and a pickup truck and then get in front of the truck and slam on the brakes."[1]

Kelly Branam, the passenger in Hall's Jeep, was also deposed. She testified that she did not remember "anything that happened during the accident." Branam said, in fact, that she did not recall anything since Hall turned the Jeep around at the Mound City Road exit and got back onto the interstate. Her memory did not resume until emergency personnel rescued her from the wreckage of the Jeep. Consequently, she "[did] not have any knowledge one way or the other from [her] direct observations or senses in what lane Ms. Hinshaw was driving at any time," "how fast Ms. Hall was driving the vehicle at the time the accident

---

[1]Hinshaw apparently is referring to Davis's pickup truck.

happened," or "how fast anybody else was driving at the time the accident happened." To summarize, Branam testified that she did not "remember literally anything between the Mound City turn-off until the EMTs, the emergency personnel, arrived there. Not the smallest detail, not anything."

The same was true for Cynthia Hall, the driver of the Jeep. She remembered turning the Jeep around at the Mound City Road exit but did not remember "any part of the accident itself," and consequently, she did not have any personal knowledge of the facts alleged in the complaint. Hall testified that her first memory after the accident was at the emergency room, and she could not say whether she "swerved her vehicle" or "applied [her] brakes," and she did not "know one way or the other what lane Ms. Hinshaw was in before, during, or immediately after [the] accident."

### C. The Motions for Summary Judgment

#### 1. *Hinshaw and Landstar*

On January 24, 2020, Hinshaw and Landstar filed a joint motion for summary judgment and brief in support in which they argued that there was no genuine issue of material fact as to whether Hinshaw was negligent or whether her alleged negligence caused Hall's and Branam's injuries. They pointed out that Hinshaw and Davis both testified that "Hall swerved into the Hinshaw truck to avoid the Davis truck" and, in doing so, "did not comply with her statutory duty to ensure that the lane change could be made with safety." According to Hinshaw and Landstar, Hinshaw's and Davis's testimony established that

8

"Hall's unsafe lane change is the sole proximate cause of her injuries and any injuries sustained by Branam."

Hinshaw and Landstar further argued that Hall and Branam "cannot meet proof with proof — ever," because "they have no memory of the subject accident." Specifically, "[n]either Hall nor Branam remember the subject accident or how the wreck occurred"; therefore, they could not establish the speed at which Hall was driving; the Jeep's distance behind Davis's truck as they traveled over the bridge; the lane that the Jeep was in prior to the collision with Hinshaw; whether Hall used the brakes before the collision; or "how or where Franklin and Miller were driving; how or where Hinshaw was driving; or in what lane Hinshaw was driving." They also "have admitted that they have no information that would lead them to conclude that Hall did *not* swerve into Lane 2," which, according to the motion, "goes to the heart of [their] case." (Emphasis added.)

Finally, Hinshaw and Landstar argued that Hall and Branam could not "point to any evidence that shows that Hinshaw was negligent, apart from the mere fact that an accident occurred." Rather, their proof demonstrates only "that there was an accident resulting in their injuries," and they could not "provide proof that the accident result[ed] from the negligence of Hinshaw, or anybody else." "This lack of evidence," they said, "is fatal as a matter of law."

Hall and Branam responded that there "[were] material facts in dispute . . . to suggest that Hinshaw failed to properly respond to roadway conditions and as a direct result, she negligently rear-ended the rear of [Hall's] Jeep with the front of her tractor-trailer." Hall and

9

Branam also claimed that they "raised material facts to refute the self-serving testimony of Hinshaw as to how the subject wreck occurred based on the sworn statement of accident reconstructionist Terry Reynolds[.]" Further, "even without the expert testimony of Terry Reynolds, [Hall and Branam] have raised genuine issues of material fact as to whether Joy Hinshaw, as a professional truck driver, failed to follow her training and violated various statutes of the state of Arkansas and safety codes of the Federal Motor Carrier Safety Administration.

Hall and Branam attached Terry Reynolds's affidavit to their response. Reynolds averred that he based his testimony on his review of the police report of the accident, the depositions, and "certain photographs." He also reviewed data that he downloaded from the Jeep's version of a "black box" and "inspected and photographed the 2015 Jeep" and "inspected the 2009 Volvo tractor-trailer . . . operated by [Hinshaw]." Reynolds declared that "[f]rom his investigation, the front of the Volvo tractor struck the entire rear of the Jeep in the center eastbound lane on the bridge."

Regarding the data that he downloaded from the Jeep, Reynolds explained that the vehicle had an "Air Bag Module," or ACM, that was "capable of recording and retaining both pre and post-crash data." According to Reynolds, the data that he downloaded "contained two events, which overlapped by 2.2 seconds," and two recordings "were triggered at the time of the collision and through air-bag deployment commands." Reynolds then testified as follows:

Both events were analyzed, and the events were related to the rear-end collision between the front of the Volvo tractor and the rear of the Jeep on July 10, 2017. The first collision event showed that the Jeep was traveling at 7 miles per hour (MPH), five seconds before the rear impact. At the time of impact, the Jeep had accelerated to 11 MPH, while steering gradually to the right during this five (5) second time period. The first collision event further showed that the Jeep accelerated as a result of the rear impact from 11 MPH to a maximum of 47 MPH.

During this collision, the Jeep recorded a maximum "Delta V" (change in velocity) of 39 MPH (rear to front) and a maximum 4.3 MPH "Delta V" (right to left). After this first collision event, and because of the rear impact, the Jeep was propelled forward and to the right, where it came into contact with the south bridge retaining wall.

Reynolds then explained how—in his view—the data contradicted Hinshaw's suggestion that Hall's Jeep was traveling at an excessive speed (appearing to Hinshaw as a "red streak") in Lane 1 just prior to the accident. He testified that "in excess of five seconds before being struck in the rear, the Jeep was traveling slowly, likely due to the two (2) prior collisions which had occurred in and were blocking the left traffic lane." Moreover, "[d]uring the time recorded, the Jeep accelerated and moved to the right, where it was struck in the rear by the Volvo tractor." In fact, "the speed of the Jeep as characterized by Hinshaw is directly contradicted by the pre-crash data from the Jeep" because "the Jeep was traveling no faster than 11 MPH just prior to the rear impact." In addition, "the quick lane change maneuver, as characterized by Hinshaw, is not consistent with the speed and steer angle analysis of the Jeep data." Rather, "[p]rior to the rear impact, the Jeep moved approximately 8.5 feet to its right (from the left to the center lane), while traveling approximately 82 feet in five (5) seconds," which Reynolds characterized as a "slow and controlled lane change maneuver."

11

Reynolds also suggested that Hinshaw had enough time to react to the Jeep's movement into Lane 2. According to him, "[i]f the Volvo tractor, operated by Hinshaw, was traveling at the stated 53 MPH prior to the collision, and the Jeep made its lane change maneuver in 5+ seconds, the Volvo would have been between 390 to 500 feet from the rear of the Jeep when the Jeep began its lane change."

Reynolds further testified that his physical inspection of the Jeep and the Landstar tractor-trailer contradicted Hinshaw's account of the collision. Regarding Hinshaw's claim that the Jeep collided with the left front of the tractor-trailer before changing lanes, Reynolds testified as follows:

> [T]here was no damage or transfer evidence noted on the Jeep or the left front of the tractor unit to support Hinshaw's allegations. Additionally, the lateral forces recorded in the Jeep's ACM data does not show a side impact during that interval. Also, the speed recorded in the Jeep's ACM during that time does not show a speed fast enough to pass the Hinshaw tractor at 53 MPH, a speed the operator Hinshaw stated she maintained from the area near the start of the I-40 bridge until she locked her brakes.

Reynolds also disputed Hinshaw's claim that Hall "slammed" on the Jeep's brakes after the Jeep entered the center lane, causing Hinshaw to be unable to avoid colliding with the Jeep. According to Reynolds, Hinshaw's statement was "not supported by the Jeep data, which shows the Jeep's service brake was only used in one 1/10 second interval, at 1.5 seconds before impact by the tractor"; furthermore, "the data recorded no speed loss at all during that interval when the service brake was used."

Reynolds concluded his report with a summary of his opinions. First, he opined that

> the first two collisions in the left east bound lane of the I-40 Mississippi River bridge created a hazard that caused traffic to slow and back up on the bridge which ongoing

12

traffic would have to avoid. Hall was in the left traffic land and understandably slowed in response to the traffic back up. The Jeep was traveling at 7 MPH and accelerated to 11 MPH, while making a lane change from the left traffic lane to the center traffic lane while traveling 82 feet in approximately 5 seconds, which I characterized as a slow and controlled lane change maneuver. The Jeep appeared to be traveling slowly in response to the earlier collisions.

Second, Reynolds testified that in his opinion,

> Joy Hinshaw was negligent and proximately caused this collision by failing to slow in response to the traffic back up from the two (2) prior collisions. The Jeep did not make a rapid or sudden lane change immediately in front of the Volvo tractor and did not slam on its brakes in front of the Volvo as alleged by Hinshaw. Furthermore, if the Volvo had been traveling at a constant 53 MPH, there would have been more than 390 feet from the rear of the Jeep when the Jeep began its lane change maneuver.

Third, Reynolds testified that

> [i]f the Volvo tractor being operated by Hinshaw was traveling at 53 MPH in the area of the west end of the I-40 bridge prior to the collision and had reacted to the Jeep entering the center lane, the subject collision would not have occurred. Hinshaw had sufficient time and distance using a "normal perception/decision/reaction time" to have come to a controlled stop prior to striking the Jeep.

In addition, "the distance that the Hinshaw tractor-trailer was behind the Jeep was such that Hinshaw's tractor-trailer would not appear as a threat to the Jeep when the lane change was initiated[.]"[2]

### 2. *Davis and IPP*

---

[2]This assertion appears in a supplemental affidavit that Reynolds prepared to respond to Hinshaw and Landstar's assertions (appearing in their reply to Hall and Branam's response in opposition to summary judgment) that his initial affidavit must be struck because it did not adequately demonstrate that he was competent to testify as an accident-reconstruction expert, failed to include certified copies of the ACM data that Reynolds relied on to form his opinions, and ultimately supported Hinshaw's testimony that Hall improperly changed lanes. The circuit court did not strike Reynolds's affidavits and, as we explain, *infra*, appeared to credit Reynolds's qualifications and testimony. Consequently, we set forth only the portion of the supplemental affidavit that we deem most relevant here.

Davis and IPP filed a joint motion for summary judgment contemporaneously with Hinshaw and Landstar's summary-judgment motion. They argued that there was no genuine issue of material fact as to whether Davis's alleged negligent conduct proximately caused Hall's and Branam's injuries. In particular, Davis and IPP contended the appellants "[had] the burden of showing that the negligence of others proximately caused their accident, and that they were free of negligence." They argued that "now that the other drivers have been deposed, it is clear that there is no genuine issue of material fact that anything other than the acts of Plaintiff Cynthia Hall caused [Hall and Branam's] accident." Davis's collision with the Acura, in other words, was an independent occurrence.

According to Davis and IPP, Hall "had the same obligations to follow the rules of the road as the other drivers." That is, she was required to "keep a proper lookout, keep control of her vehicle, drive at a reasonable speed, recognize the superior right of a vehicle in front to use the road, and to change lanes safely." Having failed to do so, they said, neither Hall nor Branam could prove that Davis's alleged negligence—and not Hall's failure to safely change lanes—proximately caused the collision with Hinshaw.

More particularly, Davis and IPP pointed to some of the same undisputed facts alleged in Hinshaw and Landstar's summary-judgment motion: (1) Hall and Branam were about two car lengths behind Davis's truck; (2) Hall and Branam's accident occurred when Hall tried to move into the middle lane directly in front of the Landstar truck; (3) the Jeep hit the front driver's side of the Landstar truck; and (4) Hall drove the Jeep in front of the Landstar truck

14

and slammed on the brakes. In contrast, "all [Hall and Branam] can prove is that they were in an accident. They don't know how their vehicle came to change lanes, its speed, distances, or any other specifics of their actions."

Hall and Branam filed a response claiming that a genuine issue of material fact remained as to whether Davis's collision with the Acura was a concurring proximate cause in their collision with Hinshaw's tractor-trailer. They specifically pointed to Davis's admission that he rear-ended the Acura, whose driver (unlike Davis) was able to safely stop behind the Miller-Franklin collision in Lane 1. Davis also admitted that his Ford pickup truck "was completely stopped in the left-hand lane, thus blocking the lane for motorists, including Hall . . . who was traveling behind his vehicle." Further, Hall and Branam argued that Davis and IPP acknowledged that "the wreck between [the] Jeep and Hinshaw's Volvo tractor-trailer occurred a 'split instant' after the Davis truck had collided with the Acura, which clearly shows that the two (2) wrecks were not completely independent occurring events." They also pointed to Reynolds's opinion that Davis's collision with the Acura, which subsequently blocked Lane 1, "was a road hazard for oncoming vehicles traveling eastbound at or near the I-40 bridge."[3] Hall and Branam argued that the foregoing could therefore lead a trier of fact to "conclude that Davis was negligent in rear-ending the Acura, and thus

---

[3]Hall and Branam attached Terry Reynolds's affidavit to their response to Davis's and IPP's motion for summary judgment as well as to their response to Hinshaw and Landstar's motion.

15

blocked the left-hand lane of travel, and was a proximate cause of the wreck between [Hall's] Jeep and [Hinshaw's] tractor-trailer."

### 3. *LM General*

LM General also filed a motion for summary judgment that incorporated the motions and exhibits that had been filed by Hinshaw and Landstar as well as Davis and IPP. According to LM General, those pleadings and exhibits demonstrated that there was "no genuine issue of material fact to support [Hall and Branam's] claims against either Sherita Franklin or LM General Insurance Company." In fact, LM General asserted that no evidence had been set forth to support the complaint's allegations that Franklin was negligent, and none of the deposed witnesses set forth "evidence even implying evidence of negligence or causation." The evidence only demonstrated that Franklin's vehicle stalled in Lane 1. Therefore, "[i]f there is no evidence of negligence on Sherita Franklin, there can be no judgment against [LM General]."

LM General's motion for summary judgment caused Hall and Branam to file a series of motions for partial summary judgment against Hinshaw and Landstar, Davis and IPP, and Miller and Heraeus. In those motions, Hall and Branam asserted that the defendants each filed answers that raised an affirmative defense that [Hall's and Branam's] injuries were proximately caused, in whole or in part, by Franklin's negligence. Each defendant also requested apportionment of the relative degree of fault of all parties and nonparties, including Franklin. Hall and Branam contended that if LM General's motion for summary judgment was granted—and the circuit court determined as a matter of law that Franklin was

16

not negligent—then they were correspondingly entitled to partial summary judgment on these defenses (at least as they related to Franklin). The appellees collectively responded that the motions for partial summary judgment should be denied because Franklin and LM General were "separate defendants" and therefore "whether or not LM General is dismissed as [an uninsured motorist carrier] has no bearing on Franklin's status as a party against whom [Hall and Branam] have asserted negligence, and by extension, has no bearing on [the] defendants' affirmative defense also asserting her negligence."

Hall and Branam also filed a response to LM General's motion for summary judgment in which they argued that LM General's motion should be denied because, among other things, LM General did not offer proof that "any of the other defendants could not possibly be uninsured or underinsured from a potential judgment" or "that none of the defendants' liability carriers are currently defending under any coverage or reservation of rights defenses." Consequently, LM General's motion for summary judgment "under contractual theories of law" was "not ripe . . . until all matters are fully adjudicated as to all potential uninsured or underinsured defendants[.]"

#### 4. *Miller and Heraeus*

Miller and Heraeus filed their motion for summary judgment on April 13, 2020. They asserted that Hall and Branam could not prove that Miller's collision with Franklin's Mustang was a proximate cause of the Jeep's collision with Hinshaw's tractor-trailer. After reminding the court that Miller pulled his truck in front of Franklin's Mustang in Lane 1 after their collision, Miller and Heraeus argued that Hall and Branam could not show any

causal connection between the Miller-Franklin wreck and Davis's collision with the Acura and, therefore, necessarily could not show a causal relationship to the Hall-Hinshaw collision. Specifically, Miller and Heraeus argued that

> [w]hen the semi-truck moved from the far left lane into the center lane sometime after Franklin and Miller's vehicles had both come to rest in the far left lane, Johnnie Garrett, even though faced with the apparent immediate appearance of Franklin's stopped vehicle in front of her, was traveling at a safe enough speed and distance that she was able to come to a stop without striking the Franklin vehicle. Davis was forced to apply his brakes and stopped, but only after bumping the rear of Garrett's vehicle. There is no evidence from which a jury could conclude that this minor collision was caused by Miller hitting the rear of Franklin's car, other than by speculation or conjecture. Franklin's car remained in the first lane, and when the semi-truck changed lanes, Garrett was forced to stop to avoid hitting Franklin's vehicle, just as she would have if there had been no previous collision.

They further argued that Hall's own negligence was the proximate cause of hers and Branam's injuries, asserting that Hall, "for reasons unknown, which cannot be known, chose not to do what Garrett had safely done and Davis had done with only a minor collision." That is, "she did not stop her vehicle," and "she did not allow the Landstar vehicle to pass before changing lanes." Miller and Heraeus argued, rather, that it was undisputed that Hall "changed lanes, moving to the center lane where the collision with Hinshaw's Landstar tractor-trailer occurred." Indeed, there was "no evidence and no one [could] testify that Miller striking the Franklin vehicle at some point prior to [Hall changing lanes], leaving the Franklin vehicle in essentially the same place where it was, was anything other than completely incidental to what happened thereafter." "Accordingly," Miller and Heraeus argued that Hall and Branam "simply [could] not argue with any credibility that the dispute

18

regarding [the] proximate cause of this accident is anything other than a dispute between [Hall and Branam] and Hinshaw and Landstar."

In response, Hall and Branam reminded the circuit court that "[p]roximate causation is usually an issue for the jury to decide, and when there is evidence to establish a causal connection between the negligence of the defendant and the damage, it is proper for the case to go to the jury." They pointed out that Miller's pickup truck came to rest in Lane 2, or the middle lane, before Miller parked it in front of Franklin's Mustang in Lane 1, and therefore, "a trier of fact could easily conclude that Miller's negligence is not relieved, because the impact between Miller's truck and Franklin's Mustang caused a road hazard for oncoming motorists in blocking two (2) lanes of travel." Therefore, Hall and Branam argued that that their collision with Hinshaw's tractor-trailer was "a natural and probable consequence of the original negligent actions of Miller[,]" and Miller's negligence "should be compared by the trier of fact with the other defendants." As they had in their responses to the summary-judgment motions filed by Davis and IPP and Hinshaw and Landstar, Hall and Branam attached Terry Reynolds's affidavit in which he opined that the first two collisions in the eastbound lane created a hazard that caused Hall to slow her vehicle and initiate the lane change to Lane 2.

D. The Circuit Court's Ruling

In an order entered on May 29, 2020, the circuit court granted the appellees' motions for summary judgment, agreeing that there was no genuine issue of material fact regarding whether the appellees' alleged negligence proximately caused Hall's and Branam's injuries.

19

The court ruled that the collisions involving Miller, Heraeus, Davis, IPP, and Franklin "were not the proximate cause of the collision between Hall and Hinshaw or [Hall's and Branam's] injuries" because "[t]he undisputed facts show that the causal chain was broken, and that any negligence on the part of Miller, Davis, and/or Franklin was not the cause of the collision between Hall and Hinshaw." Further, the court found that,

> even considering the Reynolds Affidavits, the undisputed facts show that Hall's actions—including moving from the left land into the middle lane between 7 and 11 mph instead of staying in the left lane—were the sole proximate cause of the collision between Hall and Hinshaw and the sole cause of [Hall's and Branam's] injuries and that Hinshaw and Landstar were not proximate causes of the collision between Hall and Hinshaw of [Hall's and Branam's] injuries.

Accordingly, the circuit court entered summary judgment in favor of the appellees and dismissed the case "with prejudice in its entirety." The circuit court also "denied as moot" Hall and Branam's motions for partial summary judgment regarding Franklin's negligence and comparative fault. Hall and Branam now appeal the circuit court's order. We affirm in part and reverse and remand in part.[4]

## II. *Standard of Review*

"The burden of sustaining a motion for summary judgment is always the responsibility of the moving party." *Wade v. Bartley*, 2020 Ark. App. 136, at 8, 596 S.W.3d

---

[4]As Hall and Branam note in their brief, Franklin did not file a motion for summary judgment or appear at the oral argument on those that had been filed. We do not view that as posing any issue with finality, however, because the circuit court's order granting summary judgment to the remaining parties finally concludes Hall and Branam's claims against Franklin—particularly where the circuit court dismisses the complaint "in its entirety, with prejudice."

555, 560. "Further, all proof submitted must be viewed favorably to the party resisting the motion, and any doubts and inferences must be resolved against the moving party." *Id.* "When a movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact." *Id.* "Summary judgment is not proper, however, where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ." *Id.* Indeed, "[t]he object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried[.]" *Id.* "[I]f there is any doubt whatsoever, the motion should be denied." *Id.*

### III. *Issues on Appeal*

Hall and Branam first argue that the circuit court erred when it ruled that Hinshaw's conduct—whether or not it was negligent—was not the proximate cause of the collision between the Jeep and the Landstar tractor-trailer.[5] They contend that the circuit court improperly assumed the role of fact-finder, causing it to disregard several disputed facts between Hinshaw's account of the collision and Reynolds's expert testimony.

Second, Hall and Branam argue that the circuit court erred when it granted summary judgment to LM General; Miller and Heraeus; and Davis and IPP. They assert that the circuit

---

[5]As indicated above, Hinshaw and Landstar's motion for summary judgment claimed that Hall and Branam could not prove that Hinshaw was negligent or that any negligence was the proximate cause of their injuries. The circuit court ruled that Hall and Branam could not demonstrate proximate cause, apparently assuming arguendo that Hinshaw was negligent.

court incorrectly concluded that Hall's action of changing lanes broke the causal connection between the earlier collisions that occurred between Miller and Franklin and Davis and the white Acura. As they did below, Hall and Branam point out that the determination of proximate cause is typically a matter for the jury, and a case is sufficient to be submitted to a jury whenever "there is evidence to establish a causal connection between the negligence of the defendant and the damage." There is evidence of a causal connection between the first two collisions (those involving Franklin and Miller and Davis and the white Acura) and Hall's reaction because they blocked traffic, thereby causing her normal and foreseeable response of changing lanes to avoid the stopped cars.

More specifically, Hall and Branam contend that there is conflicting testimony regarding whether Franklin activated her hazard signals once her car stalled on the bridge; therefore, there is a remaining factual dispute over whether she was negligent in failing to activate her hazard signals and whether her alleged negligence contributed to her collision with Miller and (further in the alleged chain reaction) to Hall's and Branam's injuries. As to Miller and Heraeus, the appellants insist that a genuine issue of material fact remains as to whether Miller's truck stayed in Lane 2 long enough to further block traffic and was further reason for Hall's "normal response" to change lanes. In a similar way, Davis's negligence in hitting the white Acura further congested the traffic in Lane 1—the lane in which Hall was traveling behind Davis—and also contributed to her decision to change lanes.

Miller and Heraeus and Davis and IPP respond by insisting that Hall's decision to change lanes—and not their alleged negligence—was the proximate cause of Hall's and

22

Branam's injuries. Davis and IPP further suggest that Reynolds's affidavit was not competent evidence that was capable of creating a genuine issue of material fact because it was not submitted in compliance with Rule 56 of the Arkansas Rules of Civil Procedure.

Hinshaw and Landstar also argue that the circuit court correctly ruled that there was no genuine issue of material fact on the issue of proximate cause. They point out that Hall and Branam concede in their brief that Hinshaw and Landstar made a prima facie showing of entitlement to summary judgment, and Hall and Branam failed to sustain their burden of meeting proof with proof to demonstrate that their case warranted going to trial. More specifically, Hinshaw and Landstar contend that their proof demonstrated that it was Hall's negligent decision to change lanes and not any negligence on Hinshaw's part that caused the appellants' injuries. Reynolds's testimony to the contrary was not sufficient to create a genuine issue of material fact, they say, because it was based on speculation and conjecture and was not submitted in compliance with Rule 56.

For its part, LM General also relies on Hall and Branam's concession that the appellees collectively made a prima facie showing of entitlement to summary judgment and that Reynolds's testimony was too speculative to sustain the appellants' burden of meeting proof with proof. LM General also argues that only speculation and conjecture support Hall and Branam's argument that Hall's decision to change lanes was a "normal response" to the collisions that occurred in Lane 1. According to LM General, Hall and Branam have "absolutely no proof as to 'why' Hall made the decision to leave the safety of the left lane

23

and enter the danger of the middle lane." Finally, LM General insists that Franklin's use (or nonuse) of hazard signals does not create any dispute of material fact.

IV. *Discussion*

A. Miller, Heraeus, and LM General

First, the evidence does not indicate a causal connection between Miller's or Franklin's alleged negligence and Hall's and Branam's injuries. Nothing in the proof below demonstrates that Franklin's alleged failure to activate her hazard signals or Miller's collision with Franklin contributed to Davis's collision with the white Acura or, by extension, to Hall's collision with Hinshaw's tractor-trailer. Therefore, we affirm the circuit court's determination that the evidence did not warrant submitting the cases against Miller and Heraeus and LM General to a jury.

"To establish a prima facie case of negligence, the plaintiff must demonstrate that the defendant breached a standard of care, that damages were sustained, and that the defendant's actions were the proximate cause of those damages." *Barnett v. Cleghorn*, 2017 Ark. App. 641, at 6, 536 S.W.3d 147, 150. "Proximate cause" is defined as "that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Id.* "Proximate causation is usually an issue for the jury to decide, and when there is evidence to establish a causal connection between the negligence of the defendant and the damage, it is proper for the case to go to the jury." *Id.* Proximate causation becomes a question of law only if reasonable minds could not differ." *Id.*

24

As set forth above, the deposition testimony established that Franklin's Mustang stalled in Lane 1 on the bridge, and after approximately ten cars successfully moved to Lane 2 to bypass the stalled vehicle, Miller—who failed to see the Mustang in time for a successful lane change—rear-ended Franklin's vehicle on the right passenger side. Miller stopped his pickup truck for a period of time after the collision, and then, according to Miller, he moved to Lane 1 and parked the truck in front of Franklin's Mustang.

While there is indeed conflicting testimony regarding whether Franklin activated her hazard signals and the length of time that Miller's pickup truck remained in Lane 2 after the collision, neither conflict is material to the issue of whether there is a causal link between Miller and Franklin's collision and Davis's collision with the white Acura (and, in turn, the later collision between Hall and Hinshaw). It is undisputed that it was a large tractor-trailer traveling in Lane 1 in front of the white Acura and Davis—and not Franklin's alleged failure to activate her hazard lights—that obscured their view of the obstruction in Lane 1. There is also no dispute that the tractor-trailer that was in Lane 1 successfully moved to Lane 2 and proceeded over the bridge, and when it did so, only Franklin's stalled Mustang came into view. Indeed, as set forth above, Davis testified that there was "a big [black] truck blocking the view of the damaged *Ford Mustang*," and the truck "ended up getting over to avoid hitting the *black Mustang*, and "kept going on." (Emphasis added.)

The tractor-trailer's successful lane change also indicates that no matter how long Miller's pickup truck was in Lane 2 after it collided with the Mustang, Miller had already moved it back into Lane 1 (in front of the Mustang) by the time the driver of the white Acura

25

and Davis realized that Lane 1 was obstructed. The driver of the white Acura, moreover, was able to safely stop once Franklin's stalled Mustang came into view, further attenuating any connection between the Miller-Franklin collision and Davis's collision with the white Acura. Therefore, because we find no evidence of a causal connection between the Miller-Franklin collision and Davis's collision with the white Acura (and the later collision between Hall and Hinshaw), we affirm the circuit court's order to the extent that it granted summary judgment to Miller-Heraeus and LM General.

## B. Terry Reynolds's Affidavit

Davis and IPP and Hinshaw and Landstar (collectively, "the appellees" in this part of the discussion) both suggest that Terry Reynolds's affidavits were not competent evidence because Hall and Branam failed to submit them in compliance with Rule 56 of the Arkansas Rules of Civil Procedure. As this issue bears on whether Reynolds's testimony creates a genuine issue of material fact regarding the liability of those parties—which we address in the sections that follow—we will discuss their argument as a preliminary matter here.

The procedural history of the appellees' challenges to Mr. Reynolds's affidavits is as follows. Hall and Branam filed their response to Hinshaw and Landstar's motion for summary judgment on March 16, 2020. As we indicate above, Reynolds's initial affidavit was attached to the response.

Hinshaw and Landstar filed a reply in which they argued, among other things, that Reynolds's affidavit "must be stricken" under Ark. R. Civ. P. 56(e), which provides that "supporting affidavits shall . . . show affirmatively that the affiant is competent to testify to

26

the matters stated therein," and "sworn or certified copies of all papers or parts thereof referred to in the affidavit shall be attached thereto or served therewith." Hinshaw and Landstar urged the court not to consider Reynolds's initial affidavit because it failed to demonstrate that he was competent to testify, and the ACM data, which he used to form his opinions, was not attached to Hall and Branam's summary-judgment response or "served therewith." They likewise argued that Reynolds's testimony should be excluded because his opinions were "not the product of reliable methodology."

Hall and Branam filed a sur-reply in which they argued that Reynolds's curriculum vitae and the ACM data were filed with the court and served on Landstar and Hinshaw (as well as the other appellees) contemporaneously with their summary-judgment response. While not attached to the summary-judgment response itself, those items were attached as exhibits to Hall and Branam's amended answers to interrogatories and requests for production, which they filed with the circuit court and served on the appellees on March 16, 2020. Even so, and out of "an abundance of caution," Hall and Branam attached a supplemental affidavit from Reynolds in which he set forth his qualifications to testify as an expert in accident reconstruction and certified the copies of the ACM data that he downloaded. Reynolds's curriculum vitae, as well as the ACM data, was attached as exhibits to the supplemental affidavit.

The appellees now have two lines of attack based on Rule 56. First, invoking Rule 56(e), they assert that the circuit court should not have considered Reynolds's initial affidavit because his qualifications and the ACM data were not attached or served with Hall and

27

Branam's summary-judgment response. They also claim that the supplemental affidavit and exhibits attached to the sur-reply did not cure these deficiencies because they were not submitted in a timely manner according to Ark. R. Civ. P. 56(c), which provides in part that "no party shall submit supplemental supporting materials after the time for serving a reply, unless the court orders otherwise."

We disagree. The appellees do not dispute that Hall and Branam served them with Reynolds's curriculum vitae and the ACM data on March 16, 2020, when they also filed their response to Landstar and Hinshaw's summary-judgment motion and Reynolds's initial affidavit. While those items were not attached to the response itself, we find that their contemporaneous service on all parties and filing with the circuit court nonetheless qualified as "served therewith" for purposes of Rule 56(e).

We also hold that Reynolds's supplemental affidavit, to which his curriculum vitae and the ACM data were also attached, was not untimely under Rule 56(c). While the circuit court did not enter an order expressly permitting Hall and Branam's sur-reply, it is clear that the circuit court considered those items in its final order. In our view, the circuit court's consideration of the supplemental items is tantamount to "order[ing] otherwise" for purposes of Ark. R. Civ. P. 56(c).

## C. Davis and IPP

Hall and Branam next argue that the circuit court erred when it ruled as a matter of law that Davis's collision with the white Acura did not proximately cause their collision with Hinshaw. They insist that Hall's decision to change lanes was a normal response to the

28

obstructed traffic in Lane 1 that was due, at least in part, to Davis's collision with the white Acura. Davis and IPP, on the other hand, argue that Hall and Branam's own expert established that Hall had slowed the Jeep to a speed that allowed her to safely stop behind Davis, and therefore, Davis's collision with the Acura did not proximately cause the collision with Hinshaw. Because we agree that Hall and Branam failed to show that Davis's collision with the white Acura caused Hall to change lanes, the circuit court's order is affirmed to the extent it granted summary judgment to Davis and IPP.

> In *Barnett*, the court set forth the law governing intervening causes as follows:
>
> [P]roximate cause is the efficient and responsible cause, but it need not be the last or nearest one. The mere fact that other causes intervene between the original act of negligence and the injury for which recovery is sought is not sufficient to relieve the original actor of liability if the injury is the natural and probable consequence of the original negligent act or omission and is such as might reasonably have been foreseen as probable. The original act or omission is not eliminated as a proximate cause unless the latter is of itself sufficient to stand as a cause of injury. The intervening cause must be such that the injury would not have been suffered except for the act, conduct, or effect of the intervening agent totally independent of the acts or omission constituting the primary negligence.

2017 Ark. App. 641, at 6, 536 S.W.3d at 150–51 (quoting *Pollard v. Union Pac. R.R. Co.*, 75 Ark. App. 75, 79, 54 S.W.3d 559, 562–63 (2001)). Moreover, "[a]n intervening act that is a normal response to the stimulus of a situation is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about." *Id.* at 7, 536 S.W.3d at 151.

To reiterate, Davis testified that Hall's Jeep was about two car lengths behind him as he proceeded over the bridge. The large truck that obscured Franklin's stalled Mustang

29

moved into Lane 2, and the white Acura stopped abruptly to avoid hitting Franklin's vehicle. Davis rear-ended the white Acura, whereupon he heard the collision between the Jeep and Hinshaw's tractor-trailer occur behind him. Mr. Davis then saw Hinshaw's tractor-trailer come to a stop in Lane 2 and saw the Jeep collide with the barrier in Lane 3 of the bridge.

Neither Hall nor Branam had any memory of the accidents that occurred in Lane 1 or the circumstances of their collision with Hinshaw. They could not testify, in other words, that Hall changed lanes to avoid a collision with Davis after he rear-ended the white Acura. The evidence they offered, in fact, indicated that they could have safely come to a stop behind Davis. Hall and Branam's expert, Terry Reynolds, testified that data from the Jeep's black box indicated that in the five seconds that preceded the Jeep's collision with Hinshaw's tractor-trailer, Hall had slowed to approximately seven miles an hour, and then accelerated to eleven miles an hour as she "steered gradually" to the right toward Lane 2. Accordingly, because we agree that Branam and Hall failed to offer evidence establishing a causal link between Davis's collision with the Acura and their collision with Hinshaw, we affirm the circuit court's judgment in favor of Davis and IPP.

## D. Hinshaw and Landstar

Hall and Branam further contend that the circuit court erred when it granted Hinshaw and Landstar's motion for summary judgment. They argue that the circuit court erred when it ruled that Hinshaw's conduct was not the proximate cause of the collision between the Jeep and the Landstar tractor-trailer. They contend that the circuit court improperly assumed the role of fact-finder, causing it to disregard several disputed facts

30

between Hinshaw's account of the collision and Reynolds's expert testimony. We agree; therefore, we reverse the circuit court's order granting summary judgment to Hinshaw.

Hinshaw testified that she was driving the Landstar truck at a speed of fifty-three miles an hour in Lane 2 of the I-40 bridge. Hinshaw maintained that speed until she saw the accident vehicles in Lane 1 "about a hundred feet away." She explained that "there was debris up ahead and traffic had slowed," but she did not apply her brakes because she was following her training and "was just going to try and get through the situation."

Hinshaw further testified that shortly thereafter, Hall's Jeep appeared as "a red streak" as it passed the Landstar tractor-trailer in Lane 1. Hinshaw claimed that Hall hit her truck first as she attempted to change from Lane 1 to Lane 2 and then "slam[med] on the brakes in front of [Hinshaw's truck]."

Hinshaw more specifically testified that the passenger side of Hall's Jeep impacted the tractor-trailer's left front side as Hall changed lanes, and in doing so, "struck the tire or the entire bumper" and flattened one of the truck's tires. She also said that she applied the truck's brakes after that first impact, whereupon Hall, now in Lane 2 in front of the Landstar truck, also applied her brakes. Hinshaw's truck then impacted the rear of Hall's Jeep, but Hinshaw insisted that the impact "was not straight in the rear." Rather, Hinshaw claimed that her truck hit the Jeep "left in the rear."

Reynolds's testimony, which was based on his physical inspection of Hall's Jeep and the Volvo tractor-trailer, as well as his analysis of the ACM data, sharply conflicts with Hinshaw's version of the collision. Reynolds testified that there was no damage or transfer

31

evidence on the Jeep or the left front of the tractor-trailer that supported Hinshaw's allegation that Hall's Jeep sideswiped Hinshaw's truck as she changed lanes. The ACM data also did not indicate that there had been any side impact to Hall's Jeep or that it had been traveling at a speed fast enough to appear as "a red streak," as Hinshaw claimed. In addition, the braking data recorded by the ACM contradicted Hinshaw's testimony that Hall "slammed" on her brakes once she was in Lane 2 in front of Hinshaw. In our view, these disputed facts warrant remanding the case to the circuit court for a trial.

V. *Conclusion*

We affirm the summary judgments granted to Sherita Franklin, LM General, David Miller, Heraeus, Justin Davis, and IPP. We reverse and remand the summary judgment granted in favor of Hinshaw and Landstar.

Affirmed in part; reversed and remanded in part.

GRUBER and MURPHY, JJ., agree.

*Nahon, Saharovich & Trotz, PLC*, by: *Kevin N. Graham*; and *Glenn K. Vines, Jr.*, pro hac vice, for appellants.

*Snellgrove, Langley, Culpepper, Williams & Mullally*, by: *Todd Williams*, for separate appellees Heraeus Electro-Nite, LLC, and Martin David Miller.

*Martin, Tate, Morrow & Marston, P.C.*, by: *John L. Wardlaw*, for separate appellees Landstar Ranger, Inc., and Joy Hinshaw.

*Womack Phelps Puryear Mayfield & McNeil, P.A.*, by: *Chuck Gschwend*, for separate appellee LM General Insurance Co.

*Smith, Williams & Meeks, LLP*, by: *A. Gene Williams*, for separate appellees Industrial Power Products and Justin Davis.